United States District Court
Southern District of Texas
**ENTERED**
August 05, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| OLIVIA SLIGH, | § | CIVIL ACTION NO. |
| Plaintiff, | § | 4:20-cv-01417 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| CITY OF CONROE, | § | |
| *et al*, | § | |
| Defendants. | § | |

**OPINION AND ORDER
GRANTING MOTIONS TO DISMISS**

Plaintiff Olivia Sligh alleges that the City of Conroe and members of the Conroe Police Department and the Montgomery County Sheriff's Office violated her constitutional rights when a trained police dog severely bit her during what turned into her arrest.

The motions to dismiss by Defendants the City of Conroe, Montgomery County, Deputy Alexis Alias Montes, and Officer Tyson Sutton are granted. Dkts 55, 59 & 77.

1. Background

Sligh alleges that a change in her psychotropic medication caused her to become "suicidal and cut herself with a foot scraper which has a razor blade in it" in the early morning hours of July 5, 2018. She also says that her boyfriend called 911 to report that she'd hurt herself and then left the house on foot headed into a wooded area when he tried to take her to the hospital. She asserts that her boyfriend didn't report a crime or that she had weapon. Dkt 54 at ¶¶ 12–14.

Sutton and Montes responded to the call. They each wore bodycams, which recorded the entirety of their

interactions with Sligh. See Dkt 55-1 at 2. Sligh's allegations contradict such video in certain respects. See Dkt 54 at ¶¶ 13–23. As noted below, such contrary allegations are properly disregarded. For as shown in the first thirteen minutes of Sutton's bodycam video, the events proceeded substantially as follows.

*0:00:20 to 0:01:50.* Sutton arrives with a police dog trained by the Conroe Police Department. Montes is already on the scene. They are informed by other officers of report by Sligh's boyfriend that a suicidal Sligh wanted to "die in peace," was bleeding heavily after having cut herself, had been drinking heavily that night, and left on foot when he tried to take her to the hospital.

*0:03:56 to 0:05:21.* After brief survey of the neighborhood, Sutton retrieves the canine from his cruiser, leashes it, and begins to search for Sligh in the areas surrounding her home.

*0:09:10 to 0:10:27.* Sutton and the canine enter into a wooded area with dense underbrush, searching by flashlight. He notes that he sees her but can't reach her.

*0:10:45 to 0:11:40.* Montes arrives, and Sutton informs him of the situation. Sutton then states that Sligh "is taking off." He proceeds with the canine to follow her into the underbrush.

*0:11:40 to 0:12:02.* Sutton catches up to Sligh in the underbrush beside a fence. He shines the flashlight in her face as the canine barks and strains towards her on a leash. She approaches towards Sutton, who loudly says, "Wait, wait, wait, don't! Do not walk towards me! Do not walk towards me! The dog will bite you!"

*0:12:00 to 0:12:19.* Sligh can be heard to acknowledge the commands. She then refuses multiple commands by Montes to place her hands behind her back, to which she responds with profanity. She also slaps at Montes's hands and arms, attempting to pull away.

*0:12:19 to 0:12:30.* A physical struggle begins between Sligh and Montes. She strikes him at least once and then breaks free.

2

*0:12:30 to 0:13:33.* Sutton releases the canine, which bites Sligh's upper thigh. Sligh screams in obvious pain. Sutton commands the canine multiple time to release its bite. It doesn't immediately comply and instead bites Sligh twice more on the upper leg and ankle.

Sligh was eventually arrested. She maintains that Sutton and Montes misrepresented in their reports that she'd "resisted arrest, tried to escape, and assaulted Montes." Dkt 54 at ¶ 24. She was taken to the hospital for stitches and other treatment for the dog bites, which wounds later became infected. Id at ¶¶ 25–26.

Sligh filed this lawsuit in federal court to assert claims (i) under 42 USC § 1983 against the City of Conroe, Montgomery County, and each officer individually; (ii) under Title II of the ADA and Section 504 of the Rehabilitation Act against Montgomery County (and its Sheriff's Department) and the City of Conroe (and its Police Department); (iii) under various state-law tort claims against all Defendants; and (iv) for punitive damages. Dkt 23 at ¶¶ 30–52.

Defendants previously moved to dismiss all claims against them. Dkts 27, 28 & 29. Sligh at hearing abandoned her state-law tort claims (except as against Sutton) and withdrew the municipal-liability claim against Montgomery County, which claims were dismissed with prejudice. Her claims under the ADA for intentional discrimination were also dismissed with prejudice. And her claims for failure to accommodate under the ADA, under Section 1983 against Montes, and for municipal liability against the City of Conroe were dismissed without prejudice. See Dkt 43 (Minute Entry of 05/07/2021).

Sligh filed a third amended complaint asserting claims (i) under Section 1983 for violation of her Fourth and Fourteenth Amendment rights against the City of Conroe as a municipality and against Sutton and Montes individually; (ii) under Title II of the ADA and Section 504 of the Rehabilitation Act against Montgomery County and the City of Conroe; and (iii) for punitive damages as to all reasserted claims. Dkt 54 at ¶¶ 37–63. Montgomery

3

County, Montes, and the City of Conroe moved to dismiss for failure to state a claim. Dkts 55 & 59. The parties were ordered to mediation at hearing. See Dkt 67 (Minute Entry of 11/10/2021). Upon impasse, Sutton moved for judgment on the pleadings. Dkt 77.

    2. Legal standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff's complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted." Read together, the Supreme Court holds that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v Taylor*, 503 F3d 397, 401 (5th Cir 2007), quoting *Twombly*, 550 US at 555.

Review on motion to dismiss under Rule 12(b)(6) is constrained. The reviewing court "must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff." *Walker v Beaumont Independent School District*, 938 F3d 724, 735 (5th Cir 2019). But courts don't accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentiello v Rege*, 627 F3d 540, 544 (5th Cir 2010). And the court generally "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network LLC v Catalina Marketing Corp*, 748 F3d 631, 635 (5th Cir 2014), quoting *Collins v Morgan Stanley Dean Witter*, 224 F3d 496, 498 (5th Cir 2000).

Rule 12(c) of the Federal Rules of Civil Procedure provides, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the

4

pleadings." A motion seeking such relief "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co v Morgan Stanley Dean Witter & Co*, 313 F3d 305, 312 (5th Cir 2002), quoting *Hebert Abstract Co Inc v Touchstone Properties Limited*, 914 F2d 74, 76 (5th Cir 1990, *per curiam*). This means the legal standard for motions under Rule 12(c) is the same as those for motions pursuant to Rule 12(b)(6). See *Gentilello v Rege*, 627 F3d 540, 543–44 (5th Cir 2010).

Although review is constrained, a notable exception permits consideration of documents or other undisputed materials "if they are referred to in the plaintiff's complaint and are central to her claim." *Collins*, 224 F3d at 498–99 (quotation marks omitted), quoting *Venture Associates Corp v Zenith Data Systems Corp*, 987 F2d 429, 431 (7th Cir 1993). The Fifth Circuit has characterized this as a "limited exception." *Scanlan v Texas A&M University*, 343 F3d 533, 536 (5th Cir 2003), citing *Collins*, 224 F3d at 498–99. But it has expressly recognized that a district court may consider pertinent video (like that from an officer's body camera) if the requirements stated above are satisfied. For example, see *Robles v Ciarletta*, 797 F App'x 821, 831–32 (5th Cir 2019, *per curiam*). This is so because review of such evidence, where appropriate, can assist the court "in making the elementary determination of whether a claim has been stated." *Collins*, 224 F3d at 499. Likewise, a court isn't required to accept as true allegations that are contradicted by the materials attached to the complaint or otherwise appropriate for judicial consideration. For example, see *Cicalese v University of Texas Medical Branch*, 456 F Supp 3d 859, 872 (SD Tex 2020), citing *R2 Investments LDC v Phillips*, 401 F3d 638, 642 (5th Cir 2005). And so, any allegation contradicted by a video segment will be disregarded.

    3. Excessive-force and bystander-liability claims

Sligh brings claims against Sutton and Montes pursuant to Section 1983. These officers assert qualified

5

immunity, which protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v Callahan*, 555 US 223, 231 (2009), quoting *Harlow v Fitzgerald,* 457 US 800, 818 (1982). The availability of qualified immunity ultimately "turns only upon the *objective* reasonableness of the defendant's acts." *Thompson*, 245 F3d at 457 (emphasis in original) (quotations omitted).

      a. Officer Sutton

Sligh asserts a claim against Sutton for excessive force. Dkt 54 at ¶¶ 37–47. The elements of such claim are (i) an injury, (ii) the injury resulted directly and only from a use of force that was clearly excessive, and (iii) the excessiveness of the force was clearly unreasonable. *Taylor*, 488 F Supp 3d at 532, quoting *Trammell v Fruge*, 868 F3d 332, 340 (5th Cir 2017), in turn quoting *Deville v Marcantel*, 567 F3d 156, 167 (5th Cir 2009). The use of excessive force must also be intentional. *Brower v County of Inyo*, 489 US 593, 596 (1989). The Fifth Circuit instructs that when considering excessive-force claims, "the reasonableness of an officer's conduct depends on 'the facts and circumstances of each particular case.'" *Cooper v Brown*, 844 F3d 517, 522 (5th Cir 2016), citing *Graham v Connor*, 490 US 386, 396 (1989). Such determination is based on "the perspective of a reasonable officer on the scene." Ibid.

Sligh can't demonstrate violation of a constitutional right on these facts. She was uncooperative at the time of her arrest—and indeed, responded with hostility to warnings that the canine would bite if approached, actively resisted arrest, assaulted Montes during his attempt to handcuff her, and failed to comply with either officer's instruction. See Dkt 55-1 at 2, 0:11:40 to 0:12:30. Sutton's use of the canine under these circumstances can't be said to be unreasonable.

Neither can it be said that his subsequent inability to instantly detach the canine somehow made its use

6

unreasonable. True, the time from bite to detachment amounted to about sixty-two seconds, but this was in the midst of Sligh's own continued struggles and multiple instructions for the canine to detach—with the initial bite occurring only because Sligh refused to comply with orders and physically resisted arrest.

Sligh also can't establish that any such putative right was clearly established so as to be known by a reasonable officer. In particular, she offers no "clearly established law indicating that an officer violates the Fourth Amendment when he loses control of his canine, which proceeds to injure a suspect." *Byrd v City of Bossier*, 624 F App'x 899, 903 (5th Cir 2015, *per curiam*).

Sutton is entitled to qualified immunity.

### b. Officer Montes

Sligh also asserts a claim pursuant to Section 1983 against Montes for failure to intervene during the use of excessive force. Dkt 54 at ¶¶ 55–61. A claim for bystander liability requires a showing that Montes knew Sutton was violating Sligh's constitutional rights and had a reasonable opportunity to prevent that violation but chose not to do so. *Whitley v Hanna,* 726 F3d 631, 646 (5th Cir 2013) (citations omitted). It having been determined that Sligh hasn't established any violation of her constitutional rights by Sutton, Montes "is not within the scope of a bystander liability claim." Id at 647 (citations omitted).

Montes is entitled to qualified immunity.

### 4. Municipal-liability claims

Sligh brings claims against the City of Conroe under Section 1983. She also brings claims against both the City of Conroe and Montgomery County pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act.

### a. Section 1983

Sligh contends that the City of Conroe maintains "an unwritten policy of routinely tolerating the infliction of serious bodily injury via dog biting." Dkt 54 at 18. She specifically maintains that the City of Conroe violated certain of her constitutional rights by having official,

7

unwritten customs of using excessive force by way of "find & bite attack-trained dogs." Id at 9. And she claims that its vague and inadequate written polices, failure to properly train and supervise, and ratification of Sutton's conduct directly led to the deprivation of her constitutional rights. Id at 9.

The standards here are familiar:

> [M]unicipal liability under Section 1983 doesn't extend merely on a *respondeat superior* basis. *Monell v Department of Social Services,* 436 US 658, 691 (1978). The plaintiff must show that an official policy promulgated by the municipal policymaker was the "moving force" behind the violation of a constitutional right. *Piotrowski v City of Houston*, 237 F3d 567, 578 (5th Cir 2001) (citations omitted). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Doe v Edgewood Independent School District*, 964 F3d 351, 364–65 (5th Cir 2020) (emphasis in original), quoting *Pembaur v Cincinnati*, 475 US 469, 479 (1986).

*Hunter v City of Houston,* 564 F Supp 3d 517, 529 (SD Tex 2021).

*As to policies and procedures*, Sligh fails to establish the necessary elements of her claim that the City of Conroe has a policy and procedure to use excessive force. Most importantly, it's been determined above that no violation of any constitutional right occurred. But Sligh also doesn't identify either the official policy or the municipal policymaker necessary to establish that the City of Conroe was the "moving force" behind the alleged violations of her constitutional rights. She instead argues in utterly conclusory terms that its policies are at present

inadequate, broad, and vague. Dkt 54 at 28. That's insufficient. See *Pena v City of Rio Grande City*, 879 F3d 613, 622 (5th Cir 2018) and *Harvey v Montgomery County*, 881 F Supp 2d 785, 797 (SD Tex 2012).

*As to ratification*, the Fifth Circuit holds, "Ratification in this context requires that a policymaker knowingly approve a subordinate's actions and the improper basis for those actions. Otherwise, unless conduct is 'manifestly indefensible,' a policymaker's mistaken defense of a subordinate who is later found to have broken the law is not ratification chargeable to the municipality." *Covington v City of Madisonville*, 812 F App'x 219, 228 (5th Cir 2020, *per curiam*), citing *City of St Louis v Praprotnik,* 485 US 112, 127 (1988), and *Beattie v Madison County School District*, 254 F3d 595, 603 n 9 (5th Cir 2001). Again, there's no constitutional violation in the first instance. And beyond that, there's only conclusory allegation of a policymaker's knowing approval of actions and the improper basis for those actions. See Dkt 54 at 28.

*As to failure to train and supervise*, the elements are the same for each, being (i) the training procedures of the municipality's policymaker were inadequate, (ii) the policymaker was deliberately indifferent in adopting the training policy, and (iii) the inadequate training policy directly caused the plaintiff's injury. *Conner v Travis County*, 209 F3d 794, 796 (5th Cir 2000), quoting *Baker v Putnal*, 75 F3d 190, 200 (5th Cir 1996); see also *Pena*, 879 F3d at 623, citing *Thompson v Upshur County,* 245 F3d 447, 459 (5th Cir 2001).

Sligh fails to establish the necessary elements, even beyond her failure to show an underlying constitutional violation of right. She in no way alleges facts to establish that the City of Conroe was deliberately indifferent in adopting a training policy, the inadequacy of which directly caused her injury. This is mainly so because she fails even to identify the subject policy. Nor is there any allegation either identifying a municipal policymaker or linking municipal action to that policymaker. See generally Dkt 54; see also *Taylor v Hartley*, 488 F Supp 3d 517, 537–38

9

(SD Tex 2020). She alleges only a single, isolated incident pertaining to use of a police dog to assist officers during her apprehension. Dkt 54 at 4, 15–18. And no allegation specifies any similar incidents. See generally Dkt 54. That's again conclusory and insufficient. See *Roberts v City of Shreveport*, 397 F3d 287, 292 (5th Cir 2005), and *Bennett v City of Slidell*, 728 F2d 762, 767 (5th Cir 1984).

The claims for municipal liability under Section 1983 will be dismissed.

### b. ADA and Rehabilitation Act

Sligh also brought claims against Montgomery County and the City of Conroe for failure to accommodate pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act. Dkt 54 at ¶¶ 48–54. She contends that these provisions required Montgomery County and the City of Conroe to accommodate her disability by avoiding the use of a police dog during her apprehension. Id at ¶ 53. Such contention completely overlooks standards pertinent to the situation that Sutton and Montes confronted in that dark, wooded area after 2 am on the morning in question. For the Fifth Circuit holds that to require officers to ascertain whether their actions in the presence of exigent circumstances might comply with the ADA prior to securing the safety of themselves and others "would pose an unnecessary risk to innocents." *Hainze v Richards*, 207 F3d 795, 801 (5th Cir 2000).

Sligh contends that she was unarmed, suspected of no crime, and "experiencing a mental health crisis"—while posing no threat to either the officers or other citizens. For example, see Dkt 54 at 1, 11. That's disingenuous. The bodycam video clearly shows that Sligh posed an obvious threat to at least one human life—her own. She had taken a razor to her own throat about fifty minutes before her confrontation with the officers. What's more, Sutton and Montes were advised that she was suicidal, had cut her throat, was uncontrollable, and was bleeding from the neck after having cut her carotid artery. And when first confronted by the officers, blood was streaming from the wound and across her body. Dkt 55 at 19–21. The bodycam

footage goes on to show that she failed to abide by instructions not to walk towards the officers and to back up; that she was advised that the dog would bite; that she thereafter refused to comply with requests to put her hands behind her back; and that she instead reacted angrily, lashing out with profanity and instigating a fight. Dkt 55-1 at 2, 0:11:40–0:12:30.

Neither the ADA nor the Rehabilitation Act apply to these circumstances, where officers are responding to reported incidents—whether or not those reports involve subjects with mental disabilities—"prior to the officer's securing the scene and ensuring that there is no threat to human life." *Hainze*, 207 F3d at 801; see also *Lincoln v City of Colleyville Texas*, 2016 WL 8710478, *6 (ND Tex) (explaining that Rehabilitation Act yields same result given same language, remedies, rights, and procedures as ADA). As such, the officers weren't foreclosed of their duty to protect themselves and others. See *Lincoln*, 2016 WL 8710478 at *6, citing *City and County of San Francisco California v Sheehan*, 575 US 600, 615 (2015).

The claims under the ADA and the Rehabilitation Act will be dismissed.

### 5. Conclusion

Sligh's objection to certain evidence submitted by Montgomery County and Montes—a putative certificate of absence of public record—is SUSTAINED. Dkt 60 at 5–6; see Dkt 55-1 at 24. The exhibit has been disregarded.

The motion to dismiss by Defendants Montgomery County and Deputy Alexis Montes is GRANTED. Dkt 55.

The motion to dismiss by Defendant the City of Conroe is GRANTED. Dkt 59.

The motion to dismiss by Defendant Officer Tyson Sutton is GRANTED. Dkt 77.

It being determined above that no violation of law or constitutional right occurred, the request by Plaintiff Olivia Sligh for punitive damages is DENIED. Dkt 54 at ¶¶ 62–63; see *Auster Oil & Gas Inc v Stream*, 835 F2d 597,

11

604 (5th Cir 1899) (finding punitive damages unavailable as independent claim or cause of action).

All claims by Sligh against Defendants Montgomery County, the City of Conroe, Officer Tyson Sutton, and Deputy Alexis Montes are DISMISSED WITH PREJUDICE.

A final judgment will enter by separate order.

SO ORDERED.

Signed on August 5, 2022, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge